JPL/TJT:PJC
F. #2022R00297

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - against -

SEEMA MEMON,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
AN ARREST WARRANT

24-MJ-446

(42 U.S.C. § 1320a-7b(b)(2)(B); 18 U.S.C.
§§ 2 and 3551 et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

        SAMY HEGAZY, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG"), duly appointed according to law and acting as such.

        On or about June 12, 2023, within the Eastern District of New York and elsewhere, the defendant SEEMA MEMON, together with others, did knowingly and willfully offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such persons to purchase, lease and order any goods, facilities, services and items for which payment may have been made in whole and in part under Medicaid, a federal health care program, to wit: the payment of $520 in cash or in kind to Individual-1, whose identity is known to me, in exchange for Individual-1 submitting and causing the submission of claims to a federal health care program for Individual-1's purported home health care services.

1

(Title 42, United States Code, Section 1320a-7b(b)(2)(B); Title 18, United States Code, Sections 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:

1. I have been a Special Agent with HHS-OIG for approximately two years. As a Special Agent, I investigate health care fraud, including schemes to defraud federal health care benefit programs and schemes involving illegal kickbacks and bribes. During my tenure with HHS-OIG, I have participated in a variety of criminal health care fraud investigations, during the course of which I have interviewed witnesses, conducted physical surveillance, arranged consensually monitored telephone calls and video recordings, executed search warrants, and reviewed health care claims data, bank records, telephone records, medical records, invoices, and other business records. I am familiar with the records and documents maintained by health care providers and the laws and regulations related to the administration of federal health care benefit programs.

2. I have personally participated in the investigation of the offense discussed below. I am familiar with the facts and circumstances of this investigation from, among other things: (a) my personal participation in this investigation, (b) reports made to me by other law enforcement authorities, and (c) information obtained from witnesses.

3. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a complaint and for the issuance of an arrest warrant, I have not set forth each and every fact learned during the course of this investigation. Instead, I have set forth

only those facts, in sum and substance and in part, which I believe are necessary to establish probable cause in support of a complaint and for the issuance of the arrest warrant.

## PROBABLE CAUSE

I.     The New York State Medicaid Program

  4. The New York State Medicaid program ("Medicaid") is a federal and state health care program providing benefits to individuals and families who meet specified financial and other eligibility requirements, and certain other individuals who lack adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services, is responsible for overseeing the Medicaid program in participating states, including New York. Individuals who receive benefits under Medicaid are referred to as "recipients."

  5. Medicaid is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b), and referenced in Title 18, United States Code, Section 1347, and Title 42, United States Code, Section 1320a-7b(f).

  6. Medicaid is a health and long-term care coverage program jointly financed by states and the federal government. Each state establishes and administers its own Medicaid program and determines the type, amount, duration, and scope of services covered within broad federal guidelines. In New York State, Medicaid is administered by the New York State Department of Health ("New York DOH").

  7. New York DOH approves certain Managed Long Term Care ("MLTC") plans to provide Medicaid managed long term care. MLTC plans provide services and support to people who have long-lasting health issues or disabilities. Each MLTC plan has its own network of healthcare providers, including home care agencies, healthcare professionals, and

other providers. Managed care Medicaid providers who are within an MLTC network do not bill Medicaid directly, but instead bill the MLTC plan for services it provides to its plan members.

8. Medicaid MLTC services include social adult day care services. The term "social adult day care" ("SADC") describes a structured program that provides older adults with functional impairments socialization, supervision, personal care, and nutrition services in a protective setting. An SADC center would, for example, provide a space where its members can congregate and socialize by talking, playing card or board games, listen to music, sing karaoke, or participate in other activities under the supervision of SADC center staff who are trained to provide assistance to people with mobility and other health issues. Healthy meals, as well as transportation to and from the day care, might also be provided.

9. Medicaid MLTC services also included home health services, including those arranged through the Consumer Directed Personal Assistance Services ("CDPAP") program, which allows Medicaid recipients to hire family members or friends as their home health aides. Medicaid recipients who require assistance with activities of daily living are eligible for home health care through CDPAP. CDPAP services are paid for by Medicaid and the MLTCs through a financial intermediary ("FI"), which has an employment relationship with the Medicaid recipient's home health aide.

II.     The Defendant and Relevant Entities and Individuals

10. HSM Personal Care Corp. ("HSM") was an FI for New York Medicaid CDPAP services and was located at 2550 West 13th Street, Brooklyn, New York 11223.

11. Happy Family Social Adult Day Care ("Happy Family") was a SADC located at 8895 26th Avenue, Brooklyn, New York 11214.

12. The defendant SEEMA MEMON was an employee of HSM and Happy Family.

13. Individual-1 is a New York Medicaid recipient.[1]

III. The Health Care Kickback Scheme

14. In or about and between March 2022 and March 2024, the defendant SEEMA MEMON, together with others, offered and paid kickbacks and bribes to Medicaid recipients for services that were not provided and otherwise did not qualify for reimbursement.

15. In or about March 2022, HHS-OIG began investigating Happy Family and related entities for health care fraud, including the payment of illegal kickbacks and bribes and billing for medically unnecessary services and services that were not provided. Individual-1 video recorded the below-described conversations.

16. On or about May 1, 2023, Individual-1 spoke to the defendant SEEMA MEMON at Happy Family about becoming a member of Happy Family. MEMON asked Individual-1 if he/she used the CDPAP program and indicated that if he/she enrolled in CDPAP then he/she would get half of the money Medicaid paid. MEMON further promised Individual-1 a kickback if he/she enrolled at Happy Family, telling Individual-1 that he/she would receive $1,000 per month from having CDPAP and $400 per month for joining the adult day care. MEMON told Individual-1 not to tell anyone and that "this is illegal. The government shouldn't know that you are taking this."

17. On or about May 3, 2023, Individual-1 met the defendant SEEMA MEMON at Happy Family to request enrollment in CDPAP services with his/her MLTC.

---

[1] Individual-1 is financially compensated for the information he/she provides to the government. His/her information has proven reliable and has been corroborated by other evidence.

5

MEMON placed a phone call to Individual-1's MLTC and pretended to be Individual-1's niece. MEMON requested that Individual-1's MLTC enroll him/her for home health care and adult day care services. After the phone call, MEMON instructed Individual-1 as to what to say during the health assessment required for enrollment in home health and day care services, telling him/her, "you have to tell them that you can't take shower, you have back issue [sic]." MEMON instructed Individual-1, "tell them whatever give you more problems." MEMON also instructed Individual-1 to tell the evaluator that he/she wanted CDPAP and that MEMON was his/her niece.

18. On or about May 15, 2023, Individual-1 had a medical assessment for the purposes of his/her adult day care and home health care enrollment, which the defendant SEEMA MEMON attended. During the evaluation, MEMON indicated to the evaluator that she was Individual-1's niece and suggested to Individual-1 that he/she walk with a cane, which he/she does not normally use.

19. On approximately June 12, 2023, the defendant SEEMA MEMON paid Individual-1 $520 cash in connection with the home health services he/she was approved to receive for May 2023. Individual-1 never received any home health services during May 2023. On the same date, MEMON again attempted to enroll Individual-1 by phone in SADC services at Happy Family, misrepresenting herself as Individual-1's niece.

20. On approximately June 26, 2023, the defendant SEEMA MEMON paid Individual-1 $517 cash in connection with home health services he/she purportedly received from MEMON that he/she did not in fact receive.

21. Medicaid claims data shows that HSM submitted claims for CDPAP services for Individual-1 through Individual-1's MLTC between May 23, 2023, and October 27,

2023, totaling more than approximately $19,000. During that time, Individual-1 never received any home health care services.

22. Based on my training and experience, and information gathered during the investigation, I am aware that individuals who provide CDPAP services are paid by an FI, like HSM. Department of Labor records reveal that the defendant SEEMA MEMON is an employee of HSM. For the third quarter of 2023, which includes part of the period in which Individual-1 was enrolled for CDPAP services with HSM, MEMON received approximately $4,000 in payroll from HSM.

23. Based on the foregoing, there is probable cause to that the defendant SEEMA MEMON has committed the offense of offering and paying illegal health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B), based on, among other things, her payment and offer of payment of illegal kickbacks and bribes in the form of cash to Individual-1 in exchange for submitting and causing the submission of claims to a federal health care program for Individual-1's purported home health care services.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant SEEMA MEMON so that she be dealt with according to law.

IT IS FURTHER REQUESTED that, because public filing of this document at this time could result in a risk of flight by the defendant, as well as jeopardize the government's

investigation, all papers submitted in support of this application, the complaint and arrest warrant, be sealed until further order of the Court.


*Samy Hegazy*
SAMY HEGAZY
Special Agent, HHS-OIG

June 27, 2024
Sworn to me telephonically this
_____ day of June, 2024

_____
THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK